IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AXIOM INSURANCE MANAGERS AGENCY, L.L.C., ) ) ) Plaintiff, ) ) ) v. ) ) CAPITOL INDEMNITY CORPORATION, ) CAPITOL SPECIALITY INSURANCE ) CORPORATION, and PLATTE RIVER ) INSURANCE COMPANY, ) ) Defendants. ) | No. 11 C 1446<br><br>Judge Joan H. Lefkow |

## OPINION AND ORDER

Axiom Insurance Managers Agency, L.L.C. filed a three-count complaint against Capitol Indemnity Corporation, Capitol Specialty Insurance Corporation, and Platte River Insurance Company (collectively, "Capitol") alleging claims arising from Capitol's failure to pay amounts due to Axiom under a profit sharing agreement. Count I alleges breach of contract. Count II alleges misappropriation of trade secrets in violation of the Illinois Trade Secrets Act, 765 Ill. Comp. Stat. 1065/2(d). Count III requests an accounting due to Capitol's refusal to share its books and records relating to the calculation of Axiom's profit sharing bonus. Capitol has moved to dismiss Axiom's complaint pursuant to Federal Rule of Civil Procedure 12(b)(3), arguing that Axiom's claims are subject to the forum selection clause contained in two related agency agreements. In the alternative, Capitol requests the court to order the parties to submit to arbitration and transfer this action to the United States District Court for the Western District of Wisconsin. For the following reasons, Capitol's motion [#17] will be granted and this case will be dismissed for improper venue.

**BACKGROUND**

Axiom is a program administrator that acts on behalf of insurers, such as Capitol, to provide underwriting and administrative services, including issuing policies.[1] In January of 2008, Axiom and Capitol entered into an agreement whereby Axiom was given authority to solicit, issue, and cancel insurance policies for restaurants, bars, and nightclubs. Axiom was also authorized to bill and collect insurance premiums. It would then receive a commission from Capitol based on the total premiums collected and remitted to Capitol. The arrangement between Axiom and Capitol is set forth in a General Agent Agreement that has an effective date of January 1, 2008 and a Program Administrator Agreement that has an effective date of January 7, 2008 (collectively, the "agency agreements"). The Program Administrator Agreement was executed by representatives of Capitol and Axiom on January 31 and February 7, 2008. The General Agent Agreement was executed by the parties' representatives on January 3 and 8, 2008. The text of the two agreements is nearly identical and the provisions that are relevant to Capitol's motion to dismiss are the same in each agreement.

The agency agreements include a governing law and forum selection clause, which provides:

> In all matters concerning the validity, interpretations, performance, effect or otherwise of this Agreement, the laws of the State of Wisconsin shall govern and be applicable. The situs for any disagreement or legal action between [Axiom] and Capitol shall be Dane County, Wisconsin.

---

[1] Axiom is a limited liability company organized under the laws of the State of Illinois, with its principal place of business in Rolling Meadows, Illinois. Axiom's sole member is Dragan Djordjevic, who is a citizen of Illinois. Capitol Indemnity and Capitol Speciality are corporations organized and incorporated under the laws of the State of Wisconsin, with their principal place of business in Madison, Wisconsin. Platte River is a corporation organized and incorporated under the laws of the State of Nebraska, with its principal place of business in Madison, Wisconsin. This court has jurisdiction under 28 U.S.C. § 1332(a)(1) because the parties are diverse and the amount in controversy exceeds $75,000.

Program Administrator Agreement ("PAA") § 11.1 & General Agent Agreement ("GAA") § 11.1, included as Exs. A & B to Ogilvie Decl. The agreements also include an arbitration clause, which provides:

> If any dispute or disagreement shall arise in connection with any interpretation of this Agreement, its performance or nonperformance, or the figures and calculations used, the parties shall make every effort to meet and settle their dispute in good faith informally. If the parties cannot agree on a written settlement to the dispute within thirty (30) days after it arises . . . then the matter in controversy shall be settled by arbitration . . . .

PAA/GAA § 14(a). The agreements include a merger clause that states that "[t]he provisions of this Agreement together with the Appendices and any Addendum or Addenda attached hereto, constitute the entire Agreement." PAA/GAA § 11.8.

Certain provisions in the agency agreements indicate that Axiom and Capitol may enter into additional agreements that will allow Axiom to receive compensation in the form of "profit sharing." Section 11, titled "General Provisions," provides that Axiom "shall make any required disclosures related to [Axiom's] potential receipt of any profit sharing commission pursuant to such agreements that may exist between Capitol and [Axiom]." PAA/GAA § 11.11; *see also* PAA, App'x III § 2(c)(a) & GAA, App'x III § 2(d) (stating that Axiom "shall not receive any commission, or other compensation, from Capitol on uncollected and/or uncollectible premium"). Section 10, which sets forth the termination procedures for the agreements, provides that "[u]pon termination of this Agreement, any profit sharing agreement, or other similar arrangement between the parties, shall terminate immediately and without notice effective as of the effective date of termination of this Agreement." PAA/GAA § 10.1.

Consistent with these provisions in the agency agreements, Axiom and Capitol entered into a profit sharing plan with an effective date of January 1, 2008. *See* 2008 Profit Sharing Plan

3

("2008 PSP"), included as Ex. 2 to Axiom's Opp. to Capitol's Mot. to Dismiss. The 2008 PSP is not signed by representatives of either Axiom or Capitol and the record is unclear as to when the terms of the plan were established. A second profit sharing plan went into effect on January 1, 2009 and stayed in effect during 2010. *See* 2009 Profit Sharing Plan ("2009 PSP") & Letters from Capitol to Axiom dated Nov. 21, 2008 & Nov. 24, 2009, included as Exs. A, B & C to Axiom's First Amended Complaint. On February 23, 2011, Capitol notified Axiom that it was terminating the second profit sharing plan effective August 27, 2011. The parties do not assert that any differences between the 2008 PSP and the 2009 PSP are significant for the purpose of resolving Capitol's motion to dismiss, and the provisions that are relevant to Capitol's motion are the same in each plan.

> Section 1 of the profit sharing plan, titled "Plan," provides
>
> This Profit Sharing Plan . . . entitles Axiom . . . to receive from Capitol . . . additional compensation based upon the achievement of specified objectives as set forth herein. The Profit Sharing Bonus Period shall be on a calendar year basis, and shall become effective in the calendar year this Plan becomes effective as set forth above, and shall include, unless otherwise indicated by Capitol, all lines of business written by [Axiom] for Capitol during that calendar year.

2008PSP/2009 PSP § 1. As set forth in section 3 of the plan, Axiom's profit sharing bonus shall be calculated by multiplying the direct earned premium produced by Axiom by the applicable profit sharing payout percentage. 2008 PSP/2009 PSP § 3 & Ex. I. The plan's termination provision provides that it "shall automatically terminate as regards [Axiom] without further action by either party in the event any agency agreement between the parties terminates." 2008 PSP/2009 PSP § 5. The profit sharing plan further provides that "[a]ny bonus otherwise due . . . may, in the sole discretion of Capitol, not be paid if [Axiom] has not fully complied with the terms of any agency agreement with Capitol." 2008 PSP/2009 PSP § 6(C). The plan specifies

that "[t]he interpretation of this Plan and determination of any application thereof by Capitol shall be absolute and binding upon [Axiom]." 2008 PSP/2009 PSP § 6(F).

Capitol does not contest that this dispute arises from its alleged failure to meet its obligations under the profit sharing plan. Axiom, in its first amended complaint, alleges a claim for breach of contract based on Capitol's failure to comply with the terms of the profit sharing plan. Axiom alleges that Capitol miscalculated the profit sharing bonus that it was due for the years 2009 and 2010 and failed to pay a separate bonus based on premium increases (the "premium growth bonus") during the same time period. Axiom also requests an accounting of Capitol's books and records that relate to Capitol's calculation of the bonuses due under the plans. In addition, Axiom asserts a claim under the Illinois Trade Secrets Act on the grounds that Capitol has used its trade secrets to provide insurance quotes to third parties and to compete with Axiom. Axiom alleges that Capitol had access to its trade secrets because of the arrangement under the various agreements and that Capitol has continued to use its trade secrets despite the termination of the profit sharing plan.

## ANALYSIS

In the Seventh Circuit, "[a] lack of venue challenge, based upon a forum selection clause, is appropriately brought as a Rule 12(b)(3) motion to dismiss." *Cont'l Ins. Co.* v. *M/V Orsula*, 354 F.3d 603, 606–07 (7th Cir. 2003). "In ruling on a motion to dismiss under Rule 12(b)(3), the court takes all allegations in the complaint as true unless contradicted by an affidavit." *Interlease Aviation Investors II (ALOHA) L.L.C.* v. *Iowa Corp.*, 262 F. Supp. 2d 898, 913 (N.D. Ill. 2003). The court is "not obligated to limit its consideration to the pleadings nor convert the

5

motion to one for summary judgment." *Cont'l Cas. Co.* v. *Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005).

The issue presented is whether Axiom agreed to resolve claims arising under the profit sharing plan according to the procedures set forth in the agency agreements. According to Wisconsin contract principles, which govern the agency agreements, "instruments executed at the same time between the same contracting parties in the course of the same transaction will be construed together." *Harris* v. *Metro. Mall*, 334 N.W.2d 519, 523 (Wis. 1983) (quoting *Wipfli* v. *Bever*, 155 N.W.2d 71, 72–73 (Wis. 1967)).[2] "The Wisconsin Supreme Court has indicated that contracts are 'related' for purposes of this rule if they are dependent; that is, if acceptance of one is contingent on acceptance of the other." *N. Crossarm Co., Inc.* v. *Chem. Specialties, Inc.*, No. 03-C-415-C, 2004 WL 602648, at *7 (W.D. Wis. Mar. 16, 2004) (citing *Harris*, 334 N.W.2d at 523; *Milwaukee Acceptance Corp.* v. *Kuper*, 167 N.W.2d 256, 258 (Wis. 1969) (additional citation omitted)); *Boisits* v. *Foster*, 504 N.W.2d 873, 874 (Wis. App. 1993) ("[W]hen it is clear that an agreement would not have been executed without another being executed, it will be treated as one transaction and the two agreements will be construed together." (citing *Harris*, 334 N.W.2d at 523)). The court is not aware of any Wisconsin court decisions that apply this principle to a contract that contains a forum selection clause. The Seventh Circuit, however, has recognized that an arbitration provision in one contract may govern a dispute arising out of

---

[2] Although the profit sharing plan does not contain a governing law clause, the court applies Wisconsin law, which governs any construction of the agency agreements. *See Nw. Nat'l Ins. Co.* v. *Donovan*, 916 F.2d 372, 373 (7th Cir. 1990) ("[I]t can be argued that as the rest of the contract in which a forum selection clause is found will be interpreted under the principles of interpretation followed by the state whose law governs the contract, so should that clause be."); *see also IFC Credit Corp.* v. *United Bus. & Indus. Fed. Credit Union*, 512 F.3d 989, 991 (7th Cir. 2008) ("[T]he validity of a forum-selection clause depends on the law of the jurisdiction whose rules will govern the rest of the dispute.").

another contract where the contract with the arbitration provision "is central to the [plaintiff's] position in bringing [the] action" and the two agreements are "interrelated[] and . . . interdependen[t]." *Cont'l Cas.*, 417 F.3d at 733 (applying Illinois law); *cf. Rosenblum* v. *Travelbyus.com Ltd.*, 299 F.3d 657, 663 (7th Cir. 2002) (no obligation to arbitrate where there are two "separate, free-standing contracts [that] delineate[] rights and duties independent of the other and that pertain to a particular subject matter") (applying Illinois law). Both parties have cited to *Rosenblum* and other federal cases applying Illinois law, and the court considers these cases to be persuasive authority in the absence of any conflict with Wisconsin law.

The plain language of the profit sharing plan indicates that Axiom's entitlement to a profit sharing bonus is contingent upon the rights and duties enumerated in the agency agreements. The first sentence of the plan explains that Axiom shall receive "additional" compensation, which implies that Axiom must already be receiving commissions as set forth in the agency agreements. The plan provides that no bonus will be payable upon termination of "any agency agreement." 2008 PSP/2009 PSP § 5. The plan also gives Capitol the discretion to withhold any bonus due under the plan if Axiom has not "fully complied" with the terms of the agency agreements. 2008 PSP/2009 PSP § 6(C). The plan further states that Axiom's profit sharing bonus shall be calculated by multiplying the "direct earned premium" that Axiom "produce[s]" for Capitol by the applicable profit sharing payout percentage. 2008 PSP/2009 PSP § 3 & Ex. I. The plan does not explain how Axiom will "produce" insurance premiums for Capitol, leaving the calculation of Axiom's profit sharing bonus to be determined by reference to the rights and duties set forth in the agency agreements.

7

In addition, the subject matter of the profit sharing plan is closely related to the subject matter of the agency agreements. Each of the agreements deals with the compensation that Axiom will receive in its role as a program administrator for Capitol and, more specifically, the compensation that Axiom will receive as measured against the insurance premiums that are remitted to Capitol. The agency agreements reference the profit sharing plan,[3] and the profit sharing plan in turn references the agency agreements. The agency agreements provide the basis for the relationship between Axiom and Capitol and give Axiom the authority to collect insurance premiums for Capitol. The profit sharing plan, in turn, provides an additional benefit to Axiom that is contingent upon, and informed by, the relationship set forth in the agency agreements.

Finally, the first profit sharing plan and the agency agreements are contemporaneous. The General Agent Agreement and the first profit sharing plan have an effective date of January 1, 2008 and the Program Administrator Agreement has an effective date of January 7, 2008. The two agency agreements were executed within approximately one month of each other. The timing of the three agreements, taken together with the interrelated subject matter of the agreements, indicates that the profit sharing plan should be construed together with the agency agreements.

Axiom argues that the profit sharing plan must be considered as an agreement separate from the two agency agreements because (1) the profit sharing plan and the agency agreements were entered into force and executed on different dates and contemplate different periods of

---

[3] Axiom does not dispute that the term "profit sharing agreement" as used in the agency agreements includes the profit sharing plan at issue.

completion, and (2) the agency agreements do not incorporate the profit sharing plan by reference.

Axiom has cited no authority in support of its contention that two or more agreements must be executed on the same date in order for them to be construed together. There is some Wisconsin case law – albeit over 100 years old – that supports the contrary position, namely that agreements executed during the course of the same transaction, even on different dates, should be construed together. *See Richardson* v. *Single*, 42 Wis. 40 (1877). Such a rule would be consistent with the contract principles applied in Illinois and other states. *See IFC Credit Corp.* v. *Burton Indus., Inc.*, 536 F.3d 610, 614 (7th Cir. 2008) ("The instruments do not even need to be executed simultaneously: if executed at different times as parts of the same transaction they will be construed together." (internal quotations and citation omitted)) (applying Illinois law); 17A Am. Jur. 2d *Contracts* § 379; 17A C.J.S. *Contracts* § 401. Moreover, while it is true that the 2009 PSP did not go into effect until approximately one year after the execution of the agency agreements, Axiom has pointed to no material difference between the 2008 PSP and the 2009 PSP. Letters from Capitol to Axiom that enclosed the new profit sharing plans indicate that the plans stayed substantially the same from year to year. *See* Letter from Capitol to Axiom dated Nov. 21, 2008, included as Ex. B to Axiom's First Amended Complaint ("We have adjusted the loss limitation . . . . Unless your agency writes in excess of $5 million dollars of premium with us, there should be no impact. We have also slightly modified the factors used for loss ratios between 40-45%. *Otherwise, there were no material changes from last year . . . .*" (emphasis added)); Letter from Capitol to Axiom dated Nov. 24, 2009, included as Ex. C to Axiom's First Amended Complaint ("We are pleased to announce there will be no changes to the

9

2010 profit sharing plan from this year's plan. Therefore, we are not sending you an updated table."). The 2009 PSP, like the 2008 PSP, must be viewed as contingent upon the arrangement set forth in the agency agreements. In short, the various execution and effective dates of the profit sharing plans and agency agreements are of less significance than the interrelatedness of the agreements, discussed in detail above.

Axiom relies on *Rosenblum* v. *Travelbyus.com Ltd.* to argue that the agency agreements must incorporate the profit sharing plan by reference in order for the agreements to be construed together. The facts of that case are distinguishable, however. In *Rosenblum*, the Seventh Circuit considered whether claims that arose under a business acquisition agreement were governed by the arbitration clause in a separate employment agreement. The plaintiff, Rosenblum, had sold his travel publication business to Travelbyus, and the parties memorialized the sale in an acquisition agreement. On the same day, Rosenblum and Travelbyus entered into an employment agreement that provided that Rosenblum would work for the company after the sale of his business. Only the employment agreement contained an arbitration provision. Rosenblum sued Travelbyus for failure to make a payment required by the acquisition agreement, and Travelbyus moved to dismiss the claims pursuant to the arbitration clause in the employment agreement. The court of appeals reversed the district court's grant of Travelbyus's motion, in part because the acquisition agreement did not incorporate the employment agreement by reference. "At the outset of [its] inquiry," the court emphasized that the employment agreement and the acquisition "were both necessary, but self-contained . . . components of a comprehensive business transaction." 299 F.3d at 663. Each contract delineated independent rights and duties, either contract could be fully performed even if the other contract were breached, and the subject

matter of each contract was distinct. *Id.* Here, in contrast to the contracts at issue in *Rosenblum*, the profit sharing plan was contingent upon the relationship set forth by the terms of the agency agreements and was not a "self-contained" component of the business transaction between Axiom and Capitol. Therefore *Rosenblum* does not preclude the court from construing the profit sharing plan with either agency agreement. *See Shriner* v. *Signal Fin. Co.*, 92 F. App'x 322, 326 (7th Cir. 2003) (applying *Rosenblum* and first concluding that there were two "separate contracts, complete in themselves," before considering whether the second contract incorporated the first contract by reference).

Accordingly, the profit sharing plan should be construed together with the agency agreements. The forum selection clause in the agency agreements provides, "In all matters concerning the validity, interpretations, performance, effect or otherwise of this Agreement, the laws of the State of Wisconsin shall govern and be applicable. The situs for *any disagreement or legal action* between [Axiom] and Capitol *shall be* in Dane County, Wisconsin." PAA/GAA § 11.1 (emphasis added). According to the plain meaning of this clause, any legal disagreement between Axiom and Capitol must be resolved in Dane County, Wisconsin. Furthermore, Axiom's claims in this dispute are "matters concerning the . . . effect or otherwise" of the agency agreements. Axiom does not contest the validity of the clause or argue that enforcement of the clause would be unreasonable or unjust in this situation. *See M/S Bremen* v. *Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972) (forum selection clauses are enforceable unless the party resisting enforcement can "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching"). Axiom's assertion that its claims under the Illinois Trade Secrets Act do not fall

11

within the scope of the broad language of the clause is without merit. Federal courts routinely find that non-contractual claims fall within the scope of contractually-based forum selection clauses. *See, e.g.*, *Am. Patriot Ins. Agency, Inc.* v. *Mutual Risk*, 364 F.3d 884, 888 (7th Cir. 2004) (plaintiff cannot "defeat a forum-selection clause by its choice of provisions to sue on, of legal theories to press, and of defendants to name in the suit"); *Omron Healthcare, Inc.* v. *Maclaren Exports Ltd.*, 28 F.3d 600, 602 (7th Cir. 1994) (affirming district court's ruling that trademark claims fall within scope of forum selection clause in distribution agreement); *Hugel* v. *The Corp. of Lloyd's*, 999 F.2d 206 (7th Cir. 1993) (affirming the district court's ruling that breach of fiduciary duty claims fall within scope of membership agreement). Because Axiom's claims in this dispute fall within the scope of the forum selection clause, venue is improper in the Northern District of Illinois and the case will be dismissed.[4]

## CONCLUSION AND ORDER

For the reasons stated above, Capitol's motion to dismiss for improper venue [#17] is granted. Axiom's first amended complaint is dismissed without prejudice.

Dated: June 8, 2011        Enter:_____
                                                        JOAN HUMPHREY LEFKOW
                                                        United States District Judge

---

[4] Because this case must be dismissed for improper venue, the court need not decide the proper interpretation of the arbitration clause. *See Haber* v. *Biomet, Inc.*, 578 F.3d 553, 558 (7th Cir. 2009) ("When an arbitration clause in a contract includes a forum selection clause, only the district court in that forum can issue a[n] order compelling arbitration [under § 4 of the Federal Arbitration Act]." (quotations and citations omitted)); *Kochert* v. *Adagen Med. Int'l, Inc.*, 491 F.3d 674, 678 (7th Cir. 2007) (question of arbitrability not before the court where defendant had only moved to dismiss under Rule 12(b)(3) for improper venue pursuant to a forum selection clause).